FILED & ENTERED

DEC 04 2013

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY llewis      DEPUTY CLERK

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**LOS ANGELES DIVISION**

| | |
|---|---|
| In re<br><br>ARNOLD KLEIN,<br><br>　　　　　Debtor. | Case No.: 2:11-BK-12718RN<br><br>Chapter 11 |
| BRADLEY D. SHARP,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ARNOLD W. KLEIN, M.D., an individual; BENJAMIN C. STULL II, an individual; BENJAMIN C. STULL, TRUSTEE OF THE BENJAMIN C. STULL 2008 REVOCABLE TRUST, a California Trust; SHAUN K. ANDERSON, a/k/a SEAN K. ANDERSON, an individual; PAUL CAMUSO, an individual; IRON SINK MEDIA, INC., a California corporation; DANIEL GONZALEZ, an individual; ELLEN BRUNN, an individual; GEMMA CUNNINGHAM, an individual; WILLIAM "BILL" RIDLEY, an individual; LAGUNA CLEANING SERVICES, LLC, a Nevada limited liability company; LAGUNA WINDOW WASHING, a California Corporation; | Adv. No.: 2:13-AP-01777RN<br><br>**MEMORANDUM OF DECISION RE: DR. ARNOLD KLEIN'S MOTION FOR THE RECUSAL OF JUDGE NEITER; DISQUALIFICATION OF ATTORNEYS; DISQUALIFICATION OF LANDAU, GOTTFRIED & BERGER LLP; DISQUALIFICATION OF TRUSTEE AND REVIEW DE NOVO, INJUNCTIVE RELIEF** |

RONALD A. FLATE, an
individual; THOMAS SWIFT, an
individual; MINIMALLY
INVASIVE AESTHETICS, LLC, a
California limited liability
company,

                    Defendants.

DATE:      December 4, 2013
TIME:      10:00 a.m.
PLACE:     Courtroom 1645

**INTRODUCTION**

This memorandum of decision addresses the following issues that have arisen out of the above-referenced adversary proceeding:

(i)   whether this Court should recuse itself from adjudicating this adversary proceeding and from presiding over the Debtor/Defendant Arnold Klein's ("Debtor") individual bankruptcy case;

(ii)  whether the firm Landau, Gottfried & Berger LLP ("LGB") and its attorneys, specifically John Reitman ("Reitman"), should be disqualified from representing the chapter 11 trustee Bradley Sharp ("Trustee" or "Sharp");

(iii) whether Sharp should be disqualified as a chapter 11 trustee in this adversary proceeding;

(iv)  whether grounds exist to disgorge fees of the Trustee and his attorneys;

(v)   whether grounds exist to unwind the transfers of property of the estate to third parties;

(vi)  whether de novo review of all orders in the bankruptcy case is warranted; and

(vii) whether the Debtor is entitled to injunctive relief.

After careful consideration of the Debtor's Motion For The Recusal Of Judge Neiter; Disqualification Of Attorneys; Disqualification Of Landau, Gottfried & Berger LLP; Disqualification Of Trustee And Review De Novo, Injunctive Relief ("Motion"), the Plaintiff/Trustee's Opposition to Motion ("Opposition"), the Debtor's Reply, the declarations in support thereof, the factual history of this bankruptcy case and the related adversary

proceedings that have transpired and are known to this Court and to the parties in the bankruptcy case and this adversary proceeding, and all evidence submitted for consideration; finding that the issues have been fully briefed by the parties without the need for oral arguments and that oral arguments will not lend additional clarification of the issues; the Court hereby renders its decision based on the pleadings filed and the record of this case and of this adversary proceeding, and DENIES the relief requested in the Motion.

## STATEMENT OF RELEVANT FACTS

The facts, as known to this Court and as supported by the evidence presented, are as follows. On January 20, 2011, the Debtor sought bankruptcy protection under chapter 11 of the Bankruptcy Code in his individual capacity.[1] The Debtor served as Debtor in Possession ("DIP"), with the same rights and powers of a trustee in bankruptcy pursuant to 11 U.S.C. § 1107(a), for one year and three months until a chapter 11 trustee was appointed for cause by order of this Court on April 18, 2012. The Trustee was appointed after a contested hearing on a motion to appoint a chapter 11 trustee filed by one of the Debtor's secured creditors, Allen V.C. Davis, Trustee for Davis Trust No. 1 U/A/T November 7, 1961. Debtor was represented at the hearing by counsel.[2] In granting the motion, the Court found that the appointment of a trustee was "in the best interests of [Debtor's] creditors and his estate" based on "his

---

[1] The Court takes judicial notice of all documents filed in this case since its inception (Fed. R. Evid. 201), the contents of which are subject to the applicable Rules of Evidence, Rules of Civil Procedure and Appeals, doctrines of estoppel, and doctrines of finality. .

[2] The Debtor was represented by Peter Lively, Esq. at the hearing on the motion to appoint a chapter 11 trustee in the case. (Order Granting Motion For Appointment Of Chapter 11 Trustee, at 2.)

gross mismanagement [of the bankruptcy estate] and his inability to account for the proper use of all of the fire insurance proceeds he received in the last few years and for such other reasons as recited on the record." (Order Granting Motion For Appointment Of Chapter 11 Trustee, ¶1.)  At the time the Trustee was appointed, the DIP had been represented by at least six attorneys.[3]

Since his appointment, the Trustee has sought authorization to sell various assets of the chapter 11 estate, *inter alia*, real properties and various art pieces owned by the estate.  A chapter 11 trustee is charged with marshalling assets of a bankruptcy estate, developing a chapter 11 plan of reorganization or liquidation, generating cash for the estate's creditors and obtaining fair value for the assets of the estate.  In many instances, the Debtor vigorously challenged the sale motions and attempted, on numerous occasions, to thwart the sale of these assets in court and through unconventional methods outside court channels.  These acts of concealing assets, vandalism of estate property, and impeding the marshalling of estate assets have been documented in various pleadings filed in this case and have resulted in numerous court orders to enforce this Court's prior orders.[4]

---

[3] Apparently, the number of attorneys who have so far represented the Debtor totals eighteen.

[4] A non-exhaustive list of orders that have been entered in this case resulting from the Debtor's failure to cooperate and acts to hinder the administration of estate assets follows:

Contempt:

Order to show cause re Civil contempt against Arnold Klein (Doc # 447) (Entered: 07/12/2012)

Order Discharging in Part Order to Show Cause Re Civil Contempt Against Arnold Klein and Continuing Hearing (Doc # 570) (Entered: 09/25/2012)

Order Granting Application and Setting Hearing on Shortened Notice Re Chapter 11 Trustee's Motion for Issuance of Order to Show Cause Re: Civil Contempt Against Arnold Klein (Entered: 01/09/2013) (Doc # 684)

The times the Debtor challenged the Trustee's administration of the estate through proper court channels, the Debtor did so on three major occasions.    First, the Debtor, while represented by Mette Kurth, Esq. and subsequently, Peter Lively, Esq., inquired of the Trustee about the connections between the Trustee and other individuals or entities associated with the bankruptcy case or pending adversary proceedings.    The result of such inquiries was a "Statement of Chapter 11 Trustee in Response to Inquiries of Dr. Arnold Klein" filed on October 3, 2102.    (Docket No. 581.)[5]    In response, the Debtor filed "Debtor's Response to Statement of Chapter 11 Trustee in Response to Inquiries of Dr. Arnold Klein and Request for Hearing".    (Docket No. 617.)    The Debtor's response

---

Order to Show Cause RE Civil Contempt Against Arnold Klein and Setting Hearing on Continued Motion for Issuance of Further Writ of Assistance (Doc # 702) (Entered: 01/17/2013)

Order Adjudging Arnold Klein to be in Civil Contempt of Court (Doc # 718) (Entered: 01/25/2013)

Order RE: Issuance of a Warrant for the Incarceration of Debtor Arnold Klein for Civil Contempt of Court (Doc # 765) (Entered: 02/21/2013)

Turnover:

Order Granting Order requiring turnover of property held by Debtor Arnold Klein and persons acting under his direction and control (Doc # 433) (Entered: 06/20/2012)

Order Approving Stipulation of Debtor and the Chapter 11 Trustee to Consolidate Hearings on: (A) Debtor's Motion to Resolve Disagreement Pursuant to Paragraph 17 of the Turnover Order; and (B) Debtor's Disagreement Arising Under Paragraph 17 of the Turnover Order Regarding the Trustee's August 8, 2012 Intial List (Doc # 518) (Entered: 08/24/2012)

Order Denying Debtor's Motion to Resolve Disagreement Pursuant to Paragraph 17 of the Turnover Order (Doc # 563) (Entered: 09/13/2012)

Order Compelling immediate turnover by debtor Arnold Klein of untitled drawing by Roy Lichtenstein indentified as "Landscape - Red Sunset" (Doc # 571) (Entered: 09/25/2012)

Order Approving Chapter 11 Trustee's application for Writ of Assistance Re: Laguna Beach Property, Palm Springs Property, and Beverly Hills Office; turnover of Art and Ferrari Motor Vehicle (BNC-PDF) (Doc # 731) (Entered: 01/30/2013)

Amended order approving chapter 11 trustee's application for writ of assistance re Laguna Beach Property, Palm Springs Property, and Beverly Hills Office; turnover of art and Ferrari motor vehicle. Signed on 1/30/2013 (Doc. #732) (Entered: 01/30/2013)

---

[5]  All docket references are to the main bankruptcy case's docket unless otherwise specified.

questioned the undisclosed connections between the Trustee and R. Todd Neilson, the Chairman of the Private Bank of California ("PBC"), which allegedly gave rise to a material conflict and disqualification of the Trustee. *See* id. A reply from the Trustee followed. (Docket No. 645.)

PBC is a third-party defendant in the adversary action entitled Klein v. Khilji, et al. (2:11-ap-02407VZ) ("Khilji Action") which Debtor commenced while serving as debtor in possession. This Court recused itself *sua sponte* from presiding over the Khilji Action pursuant to 28 U.S.C. § 455(b)(4) based on its small number of shares held in PBC at the time the action was commenced. (Docket No. 48 in the Khilji Action.) Because the request for a hearing on the disinterestedness of the Trustee implicated PBC, the Court recused itself from ruling on the Trustee's disinterestedness pursuant to 28 U.S.C. § 455(b)(5)(iii). (Docket No. 767.)

A hearing was conducted before Judge Neil Bason, another bankruptcy judge, where the Debtor was represented, on a limited basis, by Jeremy Faith, Esq. The matter was taken under submission by Judge Bason resulting in his "Memorandum of Decision re: Chapter 11 Trustee's (1) Disinterestedness and (2) Disclosures" ("Disinterestedness Order") entered on March 29, 2013 in favor of the Trustee. (Docket No. 819.)

Second, the Debtor filed on June 28, 2013 in the adversary case entitled Bradley Sharp v. Arnold Klein and Helene Schley (2:13-ap-01442RN) a "Motion for Suspension of Proceedings Preliminary Injunction and Request for Hearing" ("Suspension Motion"). The motion requested a preliminary injunction to prevent the Trustee from "selling, hypothecating, settling, occupying, conveying" the

real property located at 553 S. Windsor Boulevard in Los Angeles ("Windsor Property") until the Khilji Action and the dispute with the Debtor's insurance provider are adjudicated. The motion was based partly on the Trustee's failure to disclose his association with PBC and its CEO. The Trustee opposed the motion raising, among other things, procedural issues and arguing that the motion was a collateral attack on the Court's prior orders. A reply from the Debtor followed. Issuing a lengthy and detailed ruling, this Court denied the Debtor's request to suspend the proceedings of this case finding that the Debtor failed to satisfy 11 U.S.C. § 305(a) and the motion was an improper collateral attack on this Court's prior orders. (Docket No. 31 in Adversary Proceeding No. 2:13-ap-01442RN.)

Third, this Motion was filed initially in the adversary proceeding entitled Bradley Sharp v. Arnold Klein (2:13-ap-01654RN) in error. (Docket No. 24 in Adversary Proceeding No. 2:13-ap-01654RN.) The erroneously filed motion has not been withdrawn in the aforementioned adversary proceeding, but an identical Motion was filed in this adversary proceeding on November 4, 2013. The Motion argues that: (i) this Court should recuse itself from presiding over the entire bankruptcy case pursuant to 28 U.S.C. § 455 due to his ownership of some stock in PBC; (ii) Reitman engaged in attorney misconduct by breaching his obligation of confidentiality; (iii) Trustee failed to disclose his relationship with PBC and its CEO and Judge Bason's ruling has no bearing on the Trustee's disqualification; and (iv) that fraud upon the Court has been committed. Thus, while the Debtor filed the Motion in this adversary proceeding, the substance of the Motion seeks to

disqualify this Court, the Trustee and his counsel not only from this proceeding but from the entire bankruptcy case.

The Trustee opposed the Motion on grounds that (i) Debtor presented no evidence to support this Court's recusal in the bankruptcy case or this adversary proceeding under 28 U.S.C. § 455; (ii) the Motion relitigates the issue of the Trustee's disqualification previously ruled upon by the court and therefore, a collateral attack on prior court orders; (iii) the request for a *de novo* review of the whole bankruptcy case by a neutral jurist is not based on evidence or any legal authority; (iv) the Trustee inherited the DIP's attorney-client privilege relating to matters involving the administration of the estate thereby preserving confidentiality with Reitman; and (v) LGB has no conflict of interest based on a purported relationship with R. Todd Neilson.

The Debtor's Reply focused on the purported relationship between Neilson and Reitman and Reitman's failure to disclose such a relationship warranting disqualification.

Trustee filed a surreply reiterating that Khilji and PBC are not involved in this adversary proceeding.

**DISCUSSION**

Section 455 of Title 28 governs the determination of whether this Court should recuse itself from presiding over this adversary proceeding and the entire bankruptcy case. Section 455(a) imposes upon the judge, who is the subject of a recusal motion, the burden of deciding its own recusal. The statute mandates "any justice, judge, or magistrate judge of the United States shall disqualify *himself* in any proceeding in which his impartiality might reasonably

be questioned." 28 U.S.C. § 455(a) (emphasis added).  The Ninth Circuit and the Fifth Circuit have recognized the propriety of the judge against whom recusal is sought to decide the issue.  United States v. Azhocar, 581 F.2d 735, 738 (9th Cir. 1978); In re Corrugated Container Antitrust Litigation, 614 F.2d 958, 963 n.9 (5th Cir. 1980).  As the Ninth Circuit explained "only the individual judge knows fully his own thoughts and feelings and the complete context of facts alleged." Azhocar, 581 F.2d at 738 (citations omitted).  The Fifth Circuit opined that "(i)t is for the judge who is the object of the affidavit (of bias) to pass on its sufficiency." 614 F.2d at 963 (citations omitted).  Similarly, the Eleventh Circuit explained that "judges routinely preside over motions for their own recusal.  For example, Justice Scalia presided over a motion to recuse him in a case before the United States Supreme Court." Ginsberg v. Evergreen Sec., Ltd. (In re Evergreen Sec., Ltd.), 570 F.3d 1257, 1278 (11th Cir. 2009) citing Cheney v. United States Dist. Court, 541 U.S. 913, 124 S. Ct. 1391, 158 L. Ed. 2d 225 (2004).

Accordingly, this Court finds it is incumbent upon this court to rule on the recusal motion in the first instance pursuant to statutory and case law.  The statute, as the Debtor stated, is self-executing, thereby placing the obligation to identify the existence of disqualifying grounds upon the judge himself.  See Taylor v. O'Grady, 888 F.2d 1189, 1200-1201 (7th Cir. 1989).  The Court is most knowledgeable of the convoluted facts and protracted history of this case, the decisions that have been made, and the reasoning behind such decisions.  It is, therefore, the proper court to address the Debtor's grievance with respect to this Court's

impartiality and disqualification of the Trustee and his professionals.

A. **Debtor's grounds for this Court's recusal are unsupported by evidence and do not warrant this Court's disqualification from this case.**

Recusal is warranted if the judge has a personal bias or prejudice concerning a party or personal knowledge of disputed evidentiary facts concerning the proceeding. The oft-cited case from the U.S. Supreme Court Liteky v. United States, 510 U.S. 540, 114 S. Ct. 1147 (1994), held two principles governing recusal. First, judicial rulings alone almost never constitute a valid basis for a bias or partiality motion as they are proper grounds for appeal, not recusal. Liteky, 510 U.S. at 555. Second, "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings . . . do not constitute bias . . . unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible" such that, even remarks that are critical or disapproving to counsel or to the parties ordinarily do not support bias or partiality. Id.

Here, not only did the Debtor fail to synthesize the application of § 455 and case law to the facts of this case, he failed to demonstrate any evidence of this Court's alleged partiality or bias against the Debtor. The Debtor's reliance on the Court's ties with PBC as the main reason for disqualification is misplaced.

First, with respect to this adversary proceeding, PBC is not a named defendant in the action nor was it mentioned in the complaint in any of its factual recitations. Based on Debtor's

statements in various pleadings and by his representatives in Court, Mohammed Khilji unilaterally dissolved the originally formed Minimally Invasive Aesthetics LLC ("MIA 2000") in which the Debtor had an interest.  Motion at 3; *see also* Ex. 8 to Declaration of Peter Gurfein in Support of Opposition ("Gurfein Decl.").  The Motion further states Khilji created a second MIA[6] ("MIA 2007") changing ownership of MIA 2007 under his name.  Motion at 3; *see also* Gurfein Decl., Ex. 8.  The Motion further explained that with the exception of stocks in SkinMedica, Inc., Khilji transferred the assets of MIA 2000 to MIA 2007 because SkinMedica's stocks at the time were "nontrading stocks" which made them worthless to Khilji. Motion at 4.  The Debtor asserts Khilji's actions result in a direct relationship between this adversary proceeding and the Khilji action.  Thus, the Motion concludes, the adversaries are "virtually inseparable and the Judge's failure to disqualify himself from the entire case has resulted in a gross denial of Dr. Klein's due process rights."  Motion at 9.

However, the Debtor overlooks the crucial fact that the adversary proceeding at issue involves a third MIA formed in 2012 ("MIA 2012") and not MIA 2000 or MIA 2007.  Gurfein Decl., Ex. 8. Paragraph 17 of the Complaint states,

> "Trustee is informed and believes, and based thereon alleges, that defendant Minimally Invasive Aesthetics, LLC is a California limited liability company formed on or about November 30, 2012 ("New MIA") which at all relevant times has had a principal place of business in the County

---

[6] Officially named Minimally Invasive Aesthetics 2007, Inc. under the California Secretary of State registry.  Gurfein Decl., Ex. 8.

of Los Angeles, State of California." Compl. ¶ 17.

The Motion erroneously recites the averment in the complaint as implicating MIA 2007. *See* Motion at 5. Indeed, this pending adversary proceeding involves the transfer of the proceeds from the sale of SkinMedica's stock (which was not one of the assets allegedly defalcated by Khilji) to MIA 2012 and from there, as a conduit, distributed to various individual defendants named in the complaint including the Debtor but not PBC. Because the SkinMedica stocks were not misappropriated by Khilji and remained an asset of MIA 2000 and did not involve PBC in any way, the Court finds no direct correlation between the Khilji Action and this § 549 avoidance action contrary to the Debtor's assertion. Neither Khilji nor MIA 2007 were mentioned in the complaint. Indeed, a separate action against PBC concerning PBC's involvement in Khilji's embezzlement of the assets of MIA 2007 is pending before another judge.[7]  Consequently, nothing in the complaint and the averments therein implicate this Court's ties with PBC warranting recusal from this adversary proceeding.

Second, with respect to Debtor's entire bankruptcy case, the Trustee correctly argued that PBC is not a creditor of the estate. Debtor's bankruptcy schedules do not show that PBC is a creditor. Debtor's Reply concurs. *See* Docket No. 12, Schedules D and F; Reply at 6. PBC is a third-party defendant that is alleged to have served as a conduit for Khilji's wrongful conduct. A decision from this Court concerning the numerous other matters regarding the administration of this case will not affect, adversely or favorably,

---

[7]  The action is entitled Minimally Invasive Aesthetics, LLC aka Minimally Invasive Aesthetics 2007, LLC v. The Private Bank of California is pending before the Hon. Vincent Zurzolo (2:13-ap-01473VZ).

PBC as all pending litigation involving PBC is before a different court.

More importantly, the Motion, which contained no evidence, failed to demonstrate satisfaction of § 455(a). As Liteky instructs, judicial rulings that may be adverse or remarks that may be critical of a party do not support a finding of bias. 510 U.S. at 555. The test is an objective one—"whether a reasonable person with knowledge of all the facts would conclude that the judge's impartiality might be reasonably questioned." In re Goodwin, 194 B.R. 214, 222 (9th Cir. BAP 1996). At the same time, factual allegations made do no have to be taken as true. Id. at 222 citing In re Am. Ready Mix, Inc., 14 F.3d 1497, 1501 (10th Cir. 1994). The Tenth Circuit further instructs, "a judge should not recuse [itself] on unsupported, irrational, or highly tenuous speculation." Am. Ready Mix, 14 F.3d at 1501.

Here, no facts have been presented to demonstrate that this Court's impartiality can be reasonably questioned. The Court has taken steps to recuse itself *sua sponte* when the obligation to do so was present. Debtor recognized (and indeed, commended) this Court's adherence to its duty of impartiality in his Suspension Motion. *See* Docket No. 22 (2:13-ap-01442RN) at 2-3 ("Honorable Richard M. Neiter, according to the highest standard of Judicial Conduct, sua sponte, recused himself from the Adversary Proceedings based on stock ownership in one of the 12 defendants in the Adversary Proceeding.").

However, there is no ground to recuse the Court from presiding over the bankruptcy case that does not involve PBC. Debtor's dissatisfaction of this Court's decisions in his bankruptcy

case does not support recusal. Furthermore, Debtor's allegation that he has been grossly denied his due process rights is unfounded by evidence. Procedural due process requires that a party be provided notice and an opportunity to respond. In re Goodwin, 194 B.R. at 222. The Motion failed to identify situations where Debtor and/or his counsel at the time were not served with notices of motions, hearings and orders relating thereto since the appointment of the Trustee concerning the administration of the bankruptcy estate. Debtor opposed such motions when he saw fit. Conversely, this Court has given the Debtor or any of his numerous counsel the opportunity, whenever necessary, to be heard including permitting the Debtor on occasion to speak in court notwithstanding his representation by counsel. The fact that this court ruled adversely against the Debtor based on the merits does not constitute cause for recusal. Likewise, no evidence that this Court holds any personal bias or prejudice toward Dr. Klein has ever been demonstrated.

Moreover, none of Debtor's allegations that this Court's stock holdings in PBC results in a conflict or commits "fraud upon the court" are supported by any evidence. Specific instances of fraud upon the court were not identified and to the extent that conclusory accusations of fraud upon the court were made, they are erroneous. As explained earlier, PBC is not a creditor of the estate. It is solely a third-party defendant alleged to have been the depository of funds generated by Khilji's misconduct. The Honorable Vincent P. Zurzolo, a different bankruptcy judge, will decide the fate of PBC in the adversary proceedings involving the bank. This Court believes it has recused itself promptly and properly when required by § 455 and it refuses to recuse itself when

it is obligated to remain as the judicial officer in charge of a difficult case when the parties repeatedly disagree with one another.

Instead, Debtor appears to suggest that because the liens against his properties may be fraudulent, the properties cannot be sold and efforts to sell such properties are inappropriate and that these are grounds for this Court's recusal. Case law that discusses § 455 does not support such a conclusion. If the Debtor believes the Court's decisions to sell estate properties were in error, error is the basis for appeal and not recusal. *See* Liteky, 510 U.S. at 555. Instead, the record shows no appeal or objection to the form of order has been taken of the numerous orders this Court has rendered since the Trustee took over the case. Gurfein Decl., Ex. 5. The argument, moreover, illustrates a lack of understanding of 11 U.S.C. § 363(f)(4) which confers upon a trustee the right and power to sell estate property notwithstanding disputed liens on the property.

On its surface, the allegations made in the Debtor's Motion appear to be serious challenges to the involved parties and this Court's integrity and impartiality. However, the baseless allegations in the Motion coupled with the timing of seeking a suspension of the entire bankruptcy case until a new judge and trustee are appointed almost three years after the Court was assigned the case, are indicative of the Debtor's repeated efforts throughout this case to delay its administration and to further obfuscate the facts. The untimeliness of the Motion further militates against recusal. *See* United States v. Conforte, 624 F.2d 869, 880 (9th Cir. 1980).

**B.**   **This Motion is an improper collateral attack on prior court orders**.

Although the Debtor insists the Motion is not a collateral attack on prior orders of this case, the evidence proves that the Motion is nothing but an impermissible collateral attack on this Court's prior orders.   One of the reliefs requested in the Motion seeks to disqualify the Trustee based on his connections with R. Todd Neilson ("Neilson"), the CEO of PBC.   The alleged connection pertains to Neilson and the Trustee's work in the bankruptcy case of Namco Capital Group, Inc. and Ezri Namvar.   Motion at 13-14.   The Motion then points to Trustee's disclosure that he has hired Neilson's accounting firm in past bankruptcy cases that are unrelated to the Debtor's.   Id.   Particularly, Debtor contends Trustee and Neilson both employed Pachulski Stang Ziehl & Jones LLP ("PSZJ") as special counsel in the related Namco/Namvar case and that a partner of PSZJ is a shareholder and director of PBC.   Id.

This precise issue of the Trustee's disqualification on the aforementioned facts has been adjudicated by Judge Neil Bason pursuant to his order entered on March 29, 2013.   See Disinterestedness Order, Docket No. 819.   Judge Bason ruled that based on the Debtor's contentions, Trustee is disinterested and that the connection with Neilson and PBC are too remote and attenuated to require disclosure.   Disinterestedness Order at 4-6.   Debtor dismisses as immaterial Judge Bason's decision as not being that of Judge Neiter's or Judge Zurzolo's.   Motion at 14.   The argument is meritless and indeed, counterintuitive to the Debtor's request that a new neutral judge decide the issues in this case.

Similarly, this Court must reject Debtor's assertion that he was not represented by counsel when the issue of the Trustee's disinterestedness was adjudicated. *See* <u>Motion</u> at 14. First, the record shows Jeremy Faith, Esq. represented the Debtor, albeit on a limited basis, at the initial hearing before Judge Bason. <u>Gurfein Decl</u>., Ex. 4. Second, Peter Lively, Esq. wrote the "Debtor's Response to Statement of Chapter 11 Trustee in Response to Inquiries of Dr. Arnold Klein and Request for Hearing" that served as the foundation for Judge Bason's Disinterestedness Order. (Docket No. 617.) The assertions made in the Debtor's response are almost verbatim to the assertions made in the instant Motion. As described in the Disinterestedness Order, the Debtor asserted:

> "Mr. Sharp is not a disinterested person because Mr. Sharp has a working relationship with R. Todd Neilson, the Chairman of the Board of Private Bank. The debtor argues that because Mr. Sharp and Mr. Neilson work as court-appointed chapter 11 trustees in two related bankruptcy cases (*In re Namco Capital Group, Inc.*, 2:08-bk-32333-BR ("*Namco*"), and *In re Ezri Namvar*, 2:08-bk-32349-BR, respectively) and because Mr. Sharp hired Mr. Neilson's accounting firm in *Namco*, Mr. Sharp cannot be disinterested. Similarly, the debtor argues that in *Namco*, Mr. Sharp hired the law firm Pachulski Stang Ziehl & Jones LLP ("PSZ&J") as special counsel and that the first named partner at PSZ&J is a shareholder and director of Private Bank. For these and comparable reasons the debtor argues that Mr. Sharp has both professional and "pecuniary" relationships with Mr. Neilson and Mr. Pachulski and that it is "certainly plausible" that those "relationships" are "enough to constitute a material conflict," or alternatively that there is an "appearance" of impropriety and a perception of bias. *See, e.g., Debtor Response* (dkt. 617) at 9:12-14."

<u>Disinterestedness Order</u> at 3.   Judge Bason found the Debtor's position unpersuasive and the connection with PBC too attenuated to warrant disqualification.   <u>Id.</u> at 4-6.   Debtor did not appeal the Disinterestedness Order.

This Court finds that the Disinterestedness Order is binding on this Court, the Debtor, the Trustee and LGB.   The principles of preclusion further prevent relitigation of the same issue involving the same parties under the same facts adjudicated on the merits by Judge Bason.   For this Court to reconsider the issue based on the same facts is an improper collateral attack on Judge Bason's order. This is not the first time that the Debtor has sought disqualification of the Trustee on identical facts.   In his Suspension Motion, the Debtor recited verbatim, including the emphasis made, the allegations concerning the Trustee's connection with PBC and Neilson.   (Docket No. 22 in Adversary Proceeding No. 2:13-ap-01442RN at 3.)   This Court previously found this contention to be a collateral attack on Judge Bason's ruling and denied the Suspension Motion.   (Docket No. 31 in Adversary Proceeding No. 2:13-ap-01442RN.)   The Debtor did not appeal this Court's order denying his Suspension Motion.   Consequently, this is the Debtor's third attempt to disqualify the Trustee on the same factual grounds through three different motions.

Similarly, the Debtor's attempt to disqualify the Trustee's counsel and request to disgorge fees are an impermissible collateral attack on this Court's order approving LGB's employment entered on June 14, 2012 and orders approving LGB fees—none of which the Debtor appealed.   *See* <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 306 (1995)

(collateral attacks on bankruptcy court orders are not permitted; the proper remedy is to appeal).

Lastly, the Debtor's request for an injunction rehashes the arguments that this Court rejected in two prior motions. First, the Debtor sought to suspend all proceedings in this bankruptcy case in his Suspension Motion. (Docket No. 22 in Adversary Proceeding No. 2:13-ap-01442RN at 3.) The Suspension Motion requested the Court to "issue a preliminary injunction temporarily preventing the Trustee from selling, hypothecating, settling, occupying, conveying either directly or through agents, the real property located at 553 S. Windsor Boulevard in Los Angeles . . . and for the suspension of all proceedings in this case" until the Khilji Action and the dispute with the Debtor's insurance company are adjudicated. Docket No. 22 in Adversary Proceeding No. 2:13-ap-01442RN at 7-8.) This Court denied the Suspension Motion on August 30, 2013. The Debtor did not appeal the order. Similarly, the Debtor's opposition to the sale motion relating to the Windsor Property was based on the Debtor's position that the Khilji Action must first be resolved. Docket No. 1071 at 5. The Court approved the sale and rejected the Debtor's opposition.

The instant Motion requests the Court to "issue a preliminary injunction temporarily preventing the chapter 11 trustee for the bankruptcy estate from selling, hypothecating, settling, occupying conveying either directly or through agents, the real property located at 553 S. Windsor Boulevard in Los Angeles" this time, pending re-assignment and review of all matters in this case by an impartial judge and a neutral trustee. Motion at 17. While the current Motion seeks an injunction until the case is reassigned to a

new judge, the basis for the injunction remains the same—that the pending actions concerning the fraudulent liens on the property warrant enjoining the administration of the case, particularly the sales of estate properties.  This Court has considered Debtor's position originally raised in the Suspension Motion and, based on the merits, denied the relief to enjoin the administration of the estate.  Delays have been very costly in this case, e.g., with the estate having to incur thousands of dollars in administrative fees resulting from the Debtors noncooperation and the estate's need to take action in response to the Debtor's obstructive behavior through the course of this case.  With this Motion, the Debtor seeks an impermissible collateral attack of this Court's orders by seeking the same relief on the same grounds as were previously considered.

In an attempt to recharacterize the Motion so as to fall outside the purview of a collateral attack, the Reply contends that new evidence of the Trustee's carelessness and allegations that Reitman and Neilson made monetary contributions to the same political action committee warrant finding that the Motion is not a collateral attack on prior orders.  Reply at 10.  The general rule that is well-established in this circuit prohibits parties from raising a new issue for the first time in their reply briefs.  *See* *e.g.*, Northwest Acceptance Corp. v. Lynnwood Equipment, Inc., 841 F.2d 918, 924 (9th Cir. 1988); United States v. Birtle, 792 F.2d 846, 848 (9th Cir. 1986); Eberle v. Anaheim, 901 F.2d 814, 818 (9th Cir. 1990).  As such, the Court cannot consider the Reply's new issue for disqualifying the Trustee based on "carelessness" in handling the sale of certain estate assets due to its untimeliness. Similarly, raising disqualification of Reitman based on political

contributions in the Reply when the information seems readily available at the time the Motion was filed cannot be considered at this stage of the briefing.  Besides the argument being ludicrous and devoid of any rationale or cohesiveness, the principle ensures that the opposing party's right to respond to the new argument or object to the newly presented evidence is preserved.  Because such arguments will not be considered, the Trustee's surreply is not considered as well.

Alternatively, even if considered, the Court finds that the evidence of carelessness from Debtor's counsel's declaration is inadmissible hearsay and lacks foundation and personal knowledge. The Declaration of Steffanie Stelnick does not state that she has personal knowledge of the statements in her declaration.  *See generally*, Declaration of Steffanie Stelnick ("Stelnick Decl."). Furthermore, the declaration attempts to offer testimony of an unknown declarant other than Stelnick as evidence to prove as true that the unknown declarant purchased a computer from the sale of the Debtor's properties that contained personal photographs of the Debtor.  Stelnick Decl. ¶¶3-6.  This is classic inadmissible hearsay. Fed. R. Evid. 802; *see* Bellard v. Gautreaux, 675 F.3d 454, 461 (5th Cir. 2012) (it is not error for the court to exclude *sua sponte* hearsay evidence).  Moreover, attaching a photograph of an address book is inadmissible without proper authentication and identification as a condition precedent to admissibility pursuant to Fed. R. Evid. 901.  *See* Reply at 10, Ex. B.  The lack of foundation as to the printout of the photograph, the purported website where the photograph can be found, the individual who found the photograph and the circumstances that would authenticate Exhibit B were all

missing.    In addition, since the Reply purports to place at issue the contents of the address book, Fed. R. Evid. 1002 applies.    The lack of the original writing makes the evidence inadmissible.

Likewise, the Reply did not include admissible evidence of the purported political contribution and merely refers to a website. Reply at 5.    Accordingly, the Court must reject the Debtor's assertion on procedural and evidentiary grounds without ruling on the merits of the argument relating to the connection between Reitman and PBC.

Because rules of evidence and case law prohibit introduction of the foregoing new factual issues, the Court must find the Motion, as filed, a collateral attack on its prior orders.

### C.    **The request for a *de novo* review of the whole bankruptcy case by a neutral jurist is unsupported in fact and law**.

The Motion, while it seeks *de novo* review of the entire bankruptcy case by a neutral jurist, failed to show legal authority for such relief outside of the appellate process.    Indeed, *de novo* review is not the only standard for appeals.    *See e.g.*, In re Miller, 262 B.R. 499, 503 (B.A.P. 9th Cir. 2001) (A bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed de novo) *citing* Smith v. Kennedy (In re Smith), 235 F.3d 472, 475 (9th Cir. 2000); Diamond v. City of Taft, 215 F.3d 1052, 1055 (9th Cir. 2000) (Mixed questions of law and fact are generally reviewed *de novo*).    As stated earlier, the Debtor has elected not to appeal numerous orders of this Court relating to the case.    Gurfein Decl., Ex. 5.    Consequently, such orders are final and binding on all parties affected by such orders. More importantly, the Debtor does not advance any legal authority

that he can circumvent the appellate process and seek *de novo* review of the entire case.  Accordingly, the Court must deny the Debtor's request.

**D.  The Debtor's request for injunctive relief fails**.

Debtor improperly requests enjoining the entire bankruptcy case from moving forward, particularly, the sale of estate property, by seeking the relief in this avoidance action wherein the Debtor is a defendant.  A separate adversary proceeding against the Trustee for an injunction of the sale of estate properties has not been commenced.  Notwithstanding the apparent procedural defect of the motion for a preliminary injunction, the Court finds that the Debtor failed to demonstrate entitlement to the relief.

For a preliminary injunction to issue, a movant seeking a preliminary injunction must establish (1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in his favor, and (4) that an injunction is in the public interest.  Winter v. NRDC, Inc., 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) (citations omitted); see *also* Neighborhood Assistance Corp. of Am. v. First One Lending Corp., 2012 U.S. Dist. LEXIS 67950, 36-41, 2012 WL 1698368 (C.D. Cal. May 15, 2012).  Alternatively, when a plaintiff demonstrates a strong likelihood of prevailing on the merits, a preliminary injunction may be entered based on a likelihood of irreparable harm.  Winter, 555 U.S. at 21.  In applying this sliding scale, the Supreme Court rejected the Ninth Circuit's use of "possibility" of irreparable harm for the more stringent requirement of "likelihood" of irreparable harm explaining that the former is too lenient and is

inconsistent with the Court's characterization that injunctive relief is an extraordinary remedy that is never awarded as of right.[8]  Id. at 22 *citing* Munaf v. Geren, 553 U.S. 674, 689-690, 128 S. Ct. 2207, 171 L. Ed. 2d 1 (2008).  The Motion is wanting of even an attempt to mention the standards for preliminary injunction and apply the elements to this case.  The movant's disregard of his burden to prove entitlement to injunctive relief warrants denial of the request.

**E.   Duty of confidentiality has not been breached and therefore, no conflict of interest exists to disqualify LGB and Reitman.**

The Motion to disqualify Reitman and his firm is based on two separate grounds.  Debtor argues (i) Reitman breached the duty of confidentiality when he initially met with the Debtor concerning potential representation of the Debtor in his bankruptcy case and thereafter, represented the Trustee; and (ii) Reitman failed to disclose to the Court that he has represented Neilson, the CEO of PBC, in the past in several bankruptcy cases.  Motion at 10-13, 15-16.  The Reply expounds on Reitman and his firm's failure to disclose his relationship with PBC's CEO.  Reply 2-9.

To the extent that disqualification of Trustee's counsel is sought based on the purported strong relationship between PBC's CEO and members of the LGB firm, the Court will recuse itself from deciding the issue the same way that it recused itself from deciding the Trustee's disinterestedness as it pertained to PBC.

---

[8]  The Ninth Circuit test requires clear showing of either (1) a combination of probable success on the merits and *possibility* of irreparable harm, or (2) that serious questions are raised and the balance of hardships tips sharply in the moving party's favor must be present.  *See* Sun Microsystems, Inc. v. Microsoft Corp., 188 F.3d 1115, 1119 (9th Cir. 1999).  The test is a sliding scale—as the hardship increases for the moving party, less probability of success must be shown.  Nat'l. Ctr. For Immigrants Rights, Inc. v. Immigration and Naturalization Serv., 743 F.2d 1365, 1369 (9th Cir. 1984).

The Court will rule, however, on whether a breach of confidentiality exists in this case that warrants disqualification and/or disgorgement of fees.

Much has been said by both sides about what transpired at the meeting between Reitman and the Debtor on or about February 12, 2012 while the Debtor was still acting as debtor-in-possession in the bankruptcy case and the decision not to represent the Debtor in his bankruptcy case including conflicting testimony on whether Reitman took confidential documents from the meeting. Declaration of Paul Camuso ("Camuso Decl.") in support of the Motion ¶¶2-4; Declaration of Michael Gottfried ("Gottfried Decl.") in support of the Opp'n. ¶¶3-6; Declaration of John Reitman ("Reitman Decl.") in support of the Opp'n. ¶¶4-8), Declaration of Shaun Anderson ("Anderson Decl.") in support of the Reply ¶¶2-6; Declaration of Arnold Klein ("Klein Decl.") in support of the Reply ¶¶3-12. The Court also recognizes the Debtor "feels Mr. Reitman has a conflict of interest now working with the Trustee against [him] especially given the amount of personal and private information on my case he was made privy to in [their] meeting. . . ." Klein Decl. ¶14. However, Debtor's feeling is not tantamount to evidence of breach of confidentiality.

Debtor, as the holder of the confidential information, has the burden of demonstrating that the information exchanged was confidential. *See* Elec. Frontier Found. v. CIA, 2013 U.S. Dist. LEXIS 142146, *56 (N.D. Cal. Sept. 30, 2013). Here, the Debtor failed to identify which information shared was confidential and not already available to the public through the allegation made in the Khilji Action.

Where counsel represents a debtor-in-possession, the duty to protect a client's confidences is clear. However, in this case, Reitman, his firm, and the Debtor did not agree to the representation at all. Their communication is based on a consultation with a prospective client. The test is "whether and to what extent the attorney acquired confidential information." <u>In re Tevis</u>, 347 B.R. 679, 692 (B.A.P. 9th Cir. 2006) (citation omitted).

Based on Camuso's declaration, the Debtor went into detail with Reitman about an alleged embezzlement, including allegations of fraudulent or defective mortgages and the issues concerning PBC and Chartis and other bankruptcy issues including fees. <u>Camuso Decl</u>. ¶2. He further states that Reitman left with printouts that the Debtor provided him during the meeting. <u>Id</u>. ¶3. The Debtor testifies that he provided detailed information about his situation, various litigations that were pending or that Debtor wished to pursue, evidence of embezzlement, information about his assets, and fees. <u>Klein Decl</u>. ¶8. However, Reitman's recollection of what occurred differs from Camuso's and the Debtor's testimony. First, Reitman testifies he did not take any materials from the meeting that he had not brought. <u>Reitman Decl</u>. ¶6. He further testifies that fees arrangements were not discussed. <u>Id</u>. He recalls the majority of his discussions were with Camuso and not the Debtor. <u>Id</u>. ¶5. While discussions about an alleged fraudulent promissory note took place, Reitman testified that the discussions were general in nature and were known to him to be based on the filed pleadings that he had read about the case in preparation for his meeting with the Debtor. <u>Id</u>.

Missing from the Motion is Debtor's showing that despite having third parties present, namely Camuso and Anderson, the attorney-client privilege and that of confidentiality remain applicable. *See* <u>United States v. Simpson</u>, 475 F.2d 934, 936 (D.C. Cir. 1973) (third party present in a conference between client and attorney precludes application of the rule protecting confidentiality).

Even if confidential information was exchanged, the Bankruptcy Code compels the Debtor to ". . . surrender to the trustee all property of the estate and any recorded information, including books, documents, records, and papers, relating to property of the estate, whether or not immunity is granted under section 344 of this title." <u>11 U.S.C. § 521(a)(4)</u>. Debtor, therefore, has an obligation to disclose all information concerning the properties of the estate that may or may not be confidential in nature.

More importantly, the Court finds persuasive the holding in <u>In re Bame</u>, 251 B.R. 367, 374 (Bankr. D. Minn. 2000), where the bankruptcy court, following the Supreme Court's analysis in <u>Commodity Futures Trading Com v. Weintraub</u>, 471 U.S. 343, 105 S. Ct. 1986 (1985), found that the trustee for the bankruptcy estate, succeeded to the individual debtor-in-possession's power to assert or waive the attorney-client privilege with respect to matters involving the administration of the estate. <u>Bame</u> explains that as a debtor-in-possession, the estate holds the privilege and it is the only party that can waive the privilege. <u>Id</u>. At the time of the meeting in February 2012, the Debtor was serving as debtor-in-possession and there is no evidence to the contrary. Because the

Trustee succeeded as the representative of the estate, he holds the privilege that may have existed between Reitman and the estate.

This Court finds that the Trustee steps into the shoes of a debtor-in-possession conferring all legal and equitable rights that the Debtor may have upon the Trustee. Indeed, the Trustee's rights are limited by the Debtor's rights under state law and the rights conferred by the Bankruptcy Code. Consequently, the Debtor's right to confidentiality (that arguably may have existed at the meeting between Debtor and Reitman) is conferred upon the Trustee and would be preserved for the estate in the same manner.

Lastly, LGB properly disclosed in its application for employment the meeting that occurred in February 2012 and its belief that no confidential information from the Debtor or any other person was obtained. (Docket No. 339 at 5:15-19.) Debtor did not challenge the assertion before the period for opposition expired. Accordingly, the Court finds no attorney misconduct with respect to disclosures concerning the firm connection with the Debtor.

### CONCLUSION

For the reasons stated herein, the Court denies the Debtor's Motion.

Date: December 4, 2013

Richard M. Neiter
United States Bankruptcy Judge

# NOTICE OF ENTERED ORDER AND SERVICE LIST

Notice is given by the court that a judgment or order entitled (*specify*) _ **MEMORANDUM OF DECISION RE: DR. ARNOLD KLEIN'S MOTION FOR THE RECUSAL OF JUDGE NEITER; DISQUALIFICATION OF ATTORNEYS; DISQUALIFICATION OF LANDAU, GOTTFRIED & BERGER LLP; DISQUALIFICATION OF TRUSTEE AND REVIEW DE NOVO, INJUNCTIVE RELIEF** was entered on the date indicated as AEntered@ on the first page of this judgment or order and will be served in the manner indicated below:

**I.  SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")**:  Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s), the foregoing document was served on the following person(s) by the court via NEF and hyperlink to the judgment or order. As of **December 4, 2013**, the following person(s) are currently on the Electronic Mail Notice List for this bankruptcy case or adversary proceeding to receive NEF transmission at the email address(es) indicated below.

US Trustee's Office (Los Angeles):  ustpregion16.la.ecf@usdoj.gov
Plaintiff's Counsel Peter Gurfein: pgurfien@lgbfirm.com; John Reitman: jreitman@lgbfirm.com
Counsel for Defendants William Ridley and Laguna Window Washing, Jesse Finlayson: jfinlayson@fwtrl.com
Counsel for Defendant Arnold Klein, Steffanie Stelnick:  steffanie.stelnick@gmail.com
Defendant Tom Swift:  swiftlaw@gmail.com

☐ Service information continued on attached page

**II.  SERVED BY THE COURT VIA U.S. MAIL:** A copy of this notice and a true copy of this judgment or order was sent by United States Mail, first class, postage prepaid, to the following person(s) and/or entity(ies) at the address(es) indicated below:

| | |
|---|---|
| **Defendant/Debtor's Counsel:**<br>Steffanie D Stelnick<br>Law Offices of Steffanie Stelnick<br>15821 Ventura Blvd., Ste 275<br>Encino, CA 91436 | **Debtor**<br>Arnold Klein<br>1401 North Via Monte Vista<br>Palm Springs, CA 92262 |
| **Defendants:**<br>Benjamin C. Stull II., an individual and<br>Trustee of the Benjamin C. Stull 2008<br>Revocable Trust, a California Trust;<br>550 S Indian Trail | Shaun K. Anderson<br>1176 El Rancho Blvd<br>Pocatello, ID 83201 |
| Palm Springs, CA 92264<br>Iron Sink Media Inc.<br>c/o Paul Camuso<br>3940 Pacheco Dr.<br>Sherman Oaks, CA 91403 | Daniel Gonzalez<br>1401 North Via Monte Vista<br>Palm Springs, CA 92262 |
| Daniel Gonzalez<br>1401 North Via Monte Vista<br>Palm Springs, CA 92262 | Ronald A. Flate, Esq.<br>9595 Wilshire Blvd., Suite 900<br>Beverly Hills, CA 90212 |
| Tom Swift, Esq.<br>Law Offices of Thomas Swift<br>747 North LaSalle Street, Suite 500B<br>Chicago, IL 60654 | Minimally Invasive Aesthetics, LLC<br>c/o Jeffrey Krinsk<br>501 W Broadway Ste 1250<br>San Diego, CA 92101 |

☐ Service information continued on attached page

**III.  TO BE SERVED BY THE LODGING PARTY:** Within 72 hours after receipt of a copy of this judgment or order which bears an ᴀEnteredⓐ stamp, the party lodging the judgment or order will serve a complete copy bearing an ᴀEnteredⓐ stamp by U.S. Mail, overnight mail, facsimile transmission or email and file a proof of service of the entered order on the following person(s) and/or entity(ies) at the address(es), facsimile transmission number(s), and/or email address(es) indicated below:

☐ Service information continued on attached page